IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>Hayden COHEN,<br><br>               Defendant. | 5:26-cv-135<br><br>COMPLAINT<br>WITH JURY DEMAND |

Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") brings the following complaint against Defendant Hayden Cohen (a/k/a AdiraFN and AdiraFNInfo) ("Defendant"):

## I.    NATURE OF CASE

1. Founded in 1991, Epic is a leader in the interactive entertainment and 3D engine technology fields. Epic is the creator and owner of *Fortnite*, a vibrant ecosystem full of a variety of social entertainment experiences, with over 500 million registered players. *Fortnite* is a multiplayer experience where people interact in an online world. *Fortnite* also includes thousands of creator-made games across genres, such as adventure, roleplay, survival, and more.

2. *Fortnite*'s success is attributable in large part to Epic's collaborations, which bring some of the most iconic brands and personalities in the world into the *Fortnite* ecosystem. Through these collaborations Epic is able to continuously surprise and delight its player base with new content and generate excitement about *Fortnite* by incorporating beloved brands and personalities. Working closely with its partners, Epic carefully times the announcement and release of this content, often to align with its partners' own announcements or releases. The excitement surrounding these content releases—and the trust that Epic's partners have in Epic to keep this unreleased confidential information secret—are among Epic's most valuable assets.

3. Epic treats the confidentiality of this trade secret information seriously. Because this information is so sensitive and valuable, Epic has implemented exhaustive security measures to safeguard confidential information about its upcoming content releases, partnerships, and collaborations. Among other things, Epic takes steps to restrict access to information on upcoming releases only to a limited number of individuals who are required to have such access within the scope of their job responsibilities, and to restrict folders or repositories containing this information such that only those limited individuals can access them with Epic-authorized accounts that require multi-factor authentication. Those who receive access to this trade secret information are required to enter into binding nondisclosure agreements with Epic to keep that information confidential.

4. Despite these safeguards, defendant Hayden Cohen, a former Epic contractor who executed a nondisclosure agreement with Epic, repeatedly misappropriated Epic's trade secret information and broadcasted it publicly through his anonymous social media accounts on X (formerly Twitter) and Discord, operating under the alias "AdiraFN" and "AdiraFNInfo." After executing the nondisclosure agreement and in order to complete assigned projects, Defendant was allowed to access Epic's confidential trade secret information regarding Epic's upcoming collaborations that had not yet been announced by Epic or its partners. Defendant betrayed his responsibility to keep the information confidential and breached his express contractual and legal obligations.

5. The leaked information could not have been obtained through any legitimate means and was not otherwise available to the public (such as through data mining public builds of *Fortnite* for unreleased content). Defendant leaked Epic's confidential trade secret information that was accessible to him solely because he worked on projects for Epic, and his

corresponding access to Epic's internal systems and channels.

6. Defendant knowingly abused his access to sensitive, trade secret information of both Epic and its partners to increase his social media clout and for his own personal gain. Over the course of several weeks, Defendant regularly leaked confidential details about more than a dozen unannounced collaborations and upcoming content releases in *Fortnite* publicly to thousands of his followers on X and Discord, and was then amplified to reach hundreds of thousands of others with millions of views.

7. Defendant's willful and malicious misappropriation and public disclosure of Epic's trade secrets has damaged Epic's relationships with its partners, jeopardized future collaborations, and diminished the excitement and engagement of players for both *Fortnite* and Epic's partners' properties that were the subject of the leaked content. Defendant's actions have also harmed Epic's partners, who were forced to reallocate resources to urgently address the leaks with Epic and otherwise attend to the disruption caused to their other relationships affected by the leaks.

8. This blatant disregard for the confidentiality of Epic's trade secrets and the sensitive information that its partners trust Epic to hold in confidence cannot be tolerated. Epic brings this action to hold Defendant accountable for his willful and malicious misappropriation of Epic's trade secrets and breach of his contractual obligations, and to demonstrate Epic's continued commitment to protecting its confidential trade secret information.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of Epic's federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under federal law, including the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*. This Court has supplemental jurisdiction over Epic's related state law claims under 28 U.S.C. § 1367(a).

10. Personal jurisdiction over Defendant is proper in this Court. As more fully set forth below, Defendant misappropriated Epic's valuable trade secrets and exposed those trade secrets on the Internet, undermining their inherent economic value, knowing that Epic is headquartered in North Carolina. Defendant also entered into an agreement with Epic in which Defendant consented to the exclusive jurisdiction of the state and federal courts sitting in Wake County, North Carolina, in connection with any dispute arising out of or relating to the agreement. Defendant therefore directed his actions to North Carolina, and knew or should have known that the impact of his intentional acts would cause harm here.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Epic's claims occurred in this District, where Epic is headquartered, where its confidential information was maintained, and where Epic suffered its injuries. Venue is also proper because Defendant consented to jurisdiction in this District.

### III. THE PARTIES

12. Epic is a corporation duly organized and existing under the laws of the state of Maryland. Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

13. Hayden Cohen is an individual who resides in New York, New York.

### IV. FACTS APPLICABLE TO ALL CLAIMS

**A. Epic and *Fortnite***

14. Founded in 1991, Epic is a Cary, North Carolina-based company and leader in the interactive entertainment and 3D-engine technology fields.

15. Epic operates *Fortnite*, a vibrant ecosystem full of a variety of social entertainment experiences, with over 500 million registered players. *Fortnite* was released broadly on July 25, 2017. *Fortnite* is a multiplayer experience where people interact in an online

-4-
Case 5:26-cv-00135-BO-RN   Document 1   Filed 03/05/26   Page 4 of 20

world.

16. *Fortnite*'s extremely popular play-for-free "Battle Royale" game mode was released to the public on September 26, 2017. *Fortnite*'s Battle Royale involves dropping a maximum of 100 players into a large map where the players battle each other until only one player (or team) remains standing. *Fortnite* also includes developer-made "islands," providing new experiences that span a wide variety of genres.

17. *Fortnite* is free to download, but players can purchase in-game cosmetic items such as outfits for characters. A critical component of *Fortnite*'s success is Epic's ability to offer its players fresh, exciting content through surprise collaborations with well-known brands, franchises, and personalities. Epic regularly partners with some of the most iconic brands in entertainment, gaming, film, television, music, and other industries to release content and experiences in *Fortnite*.

**B.     Epic's Trade Secrets**

18. Epic's collaborations are critical to driving player engagement, excitement, and revenue for Epic and its partners. Epic's partners often have their own large, passionate fanbases who closely follow and look for opportunities to participate in content related to those brands, including *Fortnite*. When new collaborations in *Fortnite* are announced and released, Epic receives increased engagement in *Fortnite* and increased revenue from the purchase of in-game content in *Fortnite* related to the collaboration. Epic's partners similarly derive substantial benefit from being featured in *Fortnite*, often announcing the *Fortnite* collaboration in conjunction with other important releases, like the release of a new movie or season of a television show.

19. The timing and secrecy of these collaborations are intentional. Epic and its partners invest significant resources in planning, developing, and executing carefully timed

-5-
Case 5:26-cv-00135-BO-RN     Document 1     Filed 03/05/26     Page 5 of 20

announcements and content releases. When information about an unannounced collaboration is leaked before it is officially revealed or made available in game, it undermines player excitement, damages Epic's reputation and trust with its partners, and jeopardizes future collaborative opportunities.

20. Epic maintains strict confidentiality around its upcoming content releases. Information about unannounced collaborations—including the identity of collaboration partners, the nature and scope of unreleased content, release timing, and related information—constitutes trade secrets because it is confidential and derives independent economic value from not being generally known to the public or to persons who could obtain economic value from its disclosure or use.

21. Epic takes extensive measures to maintain the secrecy of this information, including by restricting access to such information to a limited number of individuals on a need-to-know basis, maintaining secured facilities where confidential information is kept and discussed, and restricting access to the confidential information in Epic's internal system through account-level restrictions and multi-factor authentication measures.

22. Epic also requires individuals who are given access to its confidential trade secret information to execute binding nondisclosure agreements that prohibit the unauthorized disclosure or use of such information. These agreements are a critical component of Epic's efforts to maintain the secrecy of its trade secrets and to preserve the trust of its collaboration partners.

C. **Defendant's Relationship with Epic**

23. Defendant was a contractor who worked on Epic projects as an Associate Producer. Defendant performed contracted services related to various projects across teams and who gained access to information by virtue of performing services for Epic on those projects.

Defendant was contracted to Epic through a third party staffing agency. In this role, Defendant was given access to Epic's non-public, confidential information, including information about upcoming *Fortnite* content and collaborations that had not been publicly announced, only after meeting certain requirements.

24. Defendant was required to complete Epic's training on information security, data protection, and privacy.

25. On September 11, 2025, Defendant also executed a Mutual Nondisclosure Agreement with Epic (the "NDA"). Under the NDA, Defendant agreed to, among other things, "keep [Epic's] Confidential Information in strict confidence," "take all necessary steps to protect [Epic's] Confidential Information from disclosure," and "not . . . use any of [Epic's] Confidential Information except for the purpose of evaluating the information for the purposes" contemplated under the NDA.

26. The NDA defined "Confidential Information" to include, among other things, information regarding Epic's "past, present or future products or product plans," "financial or marketing information," "business plans" and "any other information of the business or affairs of [Epic] or its Affiliates that [Defendant] acquires in connection with or as a result of this Agreement."

27. Given the value of the confidential information provided to Defendant, the NDA expressly provides that Defendant's "failure to comply with any of the provisions of this Agreement will irreparably harm the business of [Epic], and that [Epic] will not have an adequate remedy at law in the event of such non-compliance."

28. The NDA is governed by the laws of the state of North Carolina, and the parties submitted to the exclusive jurisdiction of the state and federal courts sitting in Wake County,

North Carolina.

D. **Defendant's Unauthorized Disclosure of Epic's Trade Secrets**

29. Despite his express obligations under the NDA, Defendant repeatedly misappropriated Epic's trade secret and confidential information and disclosed it publicly on social media.

30. Using the alias "AdiraFNInfo" on X and "AdiraFN" on Discord, in January and February 2026, Defendant disseminated confidential and non-public information about numerous upcoming *Fortnite* content releases to thousands of followers.

31. For example, on or about January 6, 2026, Defendant posted on X, disclosing confidential information about an unannounced collaboration between *Fortnite* and the television show South Park, including details about specific cosmetic items that had not been publicly revealed:



32. Epic subsequently announced the collaboration on January 8, 2026, and the corresponding cosmetic items—including items leaked by Defendant—were made available in-game the next day. Information on the collaboration can be found at

https://www.fortnite.com/news/south-park-born-in-chaos-comes-to-fortnite?lang=en-US, part of which is reproduced below:



33. Similarly, on January 13, 2026, Defendant leaked that Epic was preparing a then-upcoming collaboration involving the Solo Leveling brand. In response to the same post, Defendant stated that there are "many leaks to share soon":



34. Epic did not officially announce the Solo Leveling collaboration until February 18, 2026, and it released the content the next day—aligning with the time frame improperly disclosed by Defendant.

35. These examples are not exhaustive. Over the next month, Defendant made dozens of posts on X and Discord disclosing confidential details about unannounced *Fortnite* content, disclosing the specific characters and cosmetics that would be included, the exact timing of the release, and other updates on the development status of collaborations.

36. At the time Defendant disclosed this information, the collaborations had not been

publicly announced by Epic or its partners.

37. Defendant's leaks were only possible because he abused the access he was granted to this information as part of his work for Epic and willfully disregarded his obligations to keep the information confidential.

38. After identifying Defendant as the source of the *Fortnite* leaks posted on the AdiraFN X and Discord accounts, Epic terminated his access to Epic's systems and confidential information. But prior to being cut off from Epic's systems, Defendant had access to and viewed additional collaborations that Epic has yet to announce.

39. On February 20, 2026, Epic sent Defendant a cease-and-desist letter demanding, among other things, that he immediately cease all unauthorized disclosures of Epic's confidential and trade secret information, agree to turn over all devices that he used to access Epic's systems and confidential information, and identify all individuals to whom he had disclosed Epic's confidential information. As of the date of this Complaint, Defendant has failed to fully comply with these demands.

40. Defendant's misappropriation was willful and malicious. Having agreed to the NDA, Defendant was aware that his conduct was unauthorized and knew that the information he accessed and leaked was confidential and contained trade secrets. Defendant also posted the leaks anonymously on X and Discord, attempting to conceal his identity from Epic and its partners to avoid liability for his conduct. On information and belief, Defendant knew and intended that these leaks would cause harm to Epic and its partners.

E. **Harm to Epic and Its Partners**

41. Defendant's unauthorized disclosures have caused, and continue to cause, serious harm to Epic.

42. Defendant's leaks have damaged Epic's relationships with its partners. Epic's

partners entrust Epic with sensitive information about their valuable properties and business plans so that Epic can work with them to release content in *Fortnite* at specific times, potentially aligning with the partner's own product announcement or release. When that information is leaked prematurely, it erodes the partner's trust in Epic and jeopardizes Epic's ability to secure future collaborations both with that partner and other potential partners.

43. Content leaks also diminish the excitement and engagement of Epic's player base. When upcoming collaborations are revealed prematurely, players are unable to experience the reveal and launch experiences as they were carefully planned by Epic and its partners. Conduct like Defendant's can also cause players to be confused by announcements, and frustrated with Epic, before content is released within *Fortnite*. As a result of the premature and unauthorized release of Epic's trade secret information by Defendant, the official announcements did not generate the intended level of excitement and engagement.

44. Defendant's conduct has also caused Epic to incur substantial costs and expenses in investigating the source of the leaks and pursuing legal remedies.

## COUNT I
## Trade Secret Misappropriation
## Under the Defend Trade Secrets Act
## (18 U.S.C. §§ 1836, *et seq.*)

45. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 44 of this Complaint as if set forth fully herein.

46. Epic's confidential information regarding its upcoming content releases, collaborations, and partnerships, including the identity of collaboration partners, the nature and scope of collaborative content, release timing, development status, and related business terms, constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

47. This information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

48. Epic has taken reasonable measures to keep this information secret, including by restricting access to such information to a limited number of individuals on a need-to-know basis, requiring the signature of NDAs as a condition precedent to receiving trade secret and confidential information, maintaining secured facilities where confidential information is kept and discussed, and restricting access to the confidential information in Epic's internal system through account-level restrictions and multi-factor authentication measures.

49. Defendant misappropriated Epic's trade secrets by publicly disclosing and using Epic's trade secrets without Epic's consent.

50. At the time of disclosure, Defendant knew or had reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and limit their use.

51. Defendant's misappropriation was willful and malicious. Defendant knew that his disclosure of Epic's trade secret information was unauthorized and would harm Epic. Defendant executed the NDA, which expressly prohibited the disclosure of Epic's confidential information and acknowledged that unauthorized disclosure would cause irreparable harm to Epic. Defendant nonetheless deliberately and repeatedly disclosed Epic's trade secrets on social media under an alias to conceal his identity.

52. Defendant's trade secrets were used in, or intended for use in, interstate or foreign commerce. Defendant disclosed Epic's trade secrets on publicly accessible social media platforms to followers located throughout the United States, including in this District.

53. Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Epic.

54. As a direct and proximate result of Defendant's misappropriation, Epic has suffered actual loss and damages, including but not limited to harm to its partner relationships, diminished player engagement, lost profits, and costs incurred in investigating and responding to Defendant's unauthorized disclosures.

55. Defendant has been unjustly enriched as a result of his misappropriation, including through any affiliate or engagement revenue, social media following, or other benefits he obtained as a result of the increased traffic to his social media profiles caused by the leaks.

56. Epic is entitled to damages, including actual loss, unjust enrichment, and exemplary damages not to exceed two times the amount of such damages, pursuant to 18 U.S.C. § 1836(b)(3)(B)–(C).

57. Epic is entitled to injunctive relief to prevent any actual or threatened misappropriation of its trade secrets, pursuant to 18 U.S.C. § 1836(b)(3)(A).

58. Epic is entitled to recover its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**COUNT II**
**Misappropriation of Trade Secrets Under the**
**North Carolina Trade Secrets Protection Act**
**(N.C. Gen. Stat. § 66-152, *et seq.*)**

59. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 58 of this Complaint, as if set forth fully herein.

60. Epic's confidential information regarding its upcoming content releases, collaborations, and partnerships constitutes trade secrets within the meaning of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152(3). This information constitutes

business or technical information, including but not limited to plans, that has commercial value and is a secret.

62. Epic took reasonable measures to maintain the secrecy of this information, including by restricting access to such information to a limited number of individuals on a need-to-know basis, requiring the signature of NDAs as a condition precedent to receiving trade secret and confidential information, maintaining secured facilities where confidential information is kept and discussed, and restricting access to the confidential information in Epic's internal system through account-level restrictions and multi-factor authentication measures.

62. Defendant misappropriated Epic's trade secrets by disclosing and using them without Epic's express or implied consent, where Defendant knew or had reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and limit their use.

63. Defendant's misappropriation was willful and malicious.

64. Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Epic.

65. Epic is entitled to injunctive relief to prevent any actual or threatened misappropriation of its trade secrets, pursuant to N.C. Gen. Stat. § 66-154(a).

66. As a direct and proximate result of Defendant's misappropriation, Epic has suffered actual damages measured by the economic loss or the unjust enrichment caused by the misappropriation, whichever is greater as proven at trial, pursuant to N.C. Gen. Stat. § 66-154(b).

67. Because Defendant's misappropriation was willful and malicious, Epic is entitled to further exemplary damages pursuant to N.C. Gen. Stat. § 66-154(c), as well as reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 66-154(d).

# COUNT III
## Breach of Contract

68. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 67 of this Complaint, as if set forth fully herein.

69. On September 11, 2025, Epic and Defendant entered into the NDA, a valid and enforceable contract with Epic.

70. Under the NDA, Defendant agreed to, among other things, "keep [Epic's] Confidential Information in strict confidence," "take all necessary steps to protect [Epic's] Confidential Information from disclosure," and "not . . . use any of [Epic's] Confidential Information except for the purpose of evaluating the information for the purposes" contemplated under the agreement.

71. The NDA defined "Confidential Information" to include, among other things, information regarding Epic's "past, present or future products or product plans," "financial or marketing information," "business plans" and "any other information of the business or affairs of [Epic] or its Affiliates that [Defendant] acquires in connection with or as a result of this Agreement."

72. The NDA also expressly stated that Defendant's "failure to comply with any of the provisions of this Agreement will irreparably harm the business of [Epic], and that [Epic] will not have an adequate remedy at law in the event of such non-compliance."

73. Epic performed its obligations under the NDA.

74. Defendant breached the NDA by: disclosing Epic's confidential information publicly on social media without Epic's consent; using Epic's confidential information for purposes other than those allowed under the agreement, including for his personal benefit and to build a social media following; and otherwise failing to keep Epic's confidential information in

strict confidence and taking all necessary steps to protect it from disclosure.

75. As a direct and proximate result of Defendant's breach of the NDA, Epic has suffered damages in an amount to be proven at trial, including but not limited to harm to its partner relationships, diminished player engagement, lost profits, and costs incurred in investigating and responding to Defendant's unauthorized disclosures.

76. Additionally, Defendant's failure to comply with the NDA has irreparably harmed Epic's business, and Epic does not have an adequate remedy at law.

### COUNT IV
### Violation of North Carolina Unfair Competition Law
### (N.C. Gen. Stat. § 75-1.1, *et seq.*)

77. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 76 of this Complaint, as if set forth fully herein.

78. Defendant's actions described herein, particularly with regard to his misappropriation of Epic's trade secrets and unauthorized disclosure of Epic's confidential and trade secret information, as alleged above, constitute an unfair or deceptive act or practice. Such acts include but are not limited to his disclosure and use of Epic's trade secret and confidential information.

79. At all relevant times, Defendant has been and continues to be engaged in commerce in or affecting North Carolina as defined by Chapter 75 of the North Carolina General Statutes, including but not limited to the disclosure and use of Epic's trade secret and confidential information.

80. Defendant's activities affect commerce in North Carolina and elsewhere, including but not limited to through Defendant's social media profiles through which he disclosed and used Epic's trade secret and confidential information, the harm caused by Defendant's activities to Epic in North Carolina and Epic's relationships with its partners, and

the decreased level of engagement from *Fortnite* players caused by Defendant's leaks.

81. Epic has been injured by Defendant's activities, including but not limited to resources expended investigating and remedying Defendant's activities, the decreased level of engagement from *Fortnite* players caused by Defendant's leaks, harm to Epic's relationships with its partners, and jeopardizing Epic's ability to secure future collaborations both with that partner and other potential partners.

82. As a direct and proximate result of this unfair and deceptive conduct, Epic has been damaged and is entitled to a judgment against Defendant for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

83. Epic is also entitled to an award of its attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## V.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Epic demands a trial by jury as to all issues so triable in this action.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Epic Games, Inc. prays for the following relief:

A.     That judgment be entered in Epic's favor against Defendant on all claims;

B.     That the Court enter an order permanently enjoining Defendant and his agents, representatives, employees, successors, and assigns, and all others in active concert or participation with Defendant, from:

    1)     Disclosing, disseminating, publishing, or otherwise making available any of Epic's trade secret or confidential information;

    2)     Using or misappropriating Epic's trade secret or confidential information for any purpose;

3) Aiding or assisting any other person or entity in any of the activities described above;

C. That the Court order Defendant to immediately return to Epic or destroy all of Epic's trade secret and confidential information in Defendant's possession, custody, or control, and to certify in writing that he has done so;

D. An award to Epic of compensatory damages, including actual loss and unjust enrichment, in an amount to be proven at trial;

E. An award to Epic of damages as permitted under 18 U.S.C. § 1836(b)(3)(C), N.C. Gen. Stat. § 66-154(c), and N.C. Gen. Stat. § 75-16;

F. An award to Epic of its reasonable attorneys' fees as permitted under 18 U.S.C. § 1836(b)(3)(D), N.C. Gen. Stat. § 66-154(d), and N.C. Gen. Stat. § 75-16.1;

G. An award to Epic of its costs incurred in this action;

H. An award to Epic of pre-judgment and post-judgment interest on all damages awarded; and

I. Such other and further relief as the Court deems just and proper.

Date: March 5, 2026

**WILLIAMS MULLEN**

By: */s/ Robert C. Van Arnam*

Robert C. Van Arnam (N.C. 28838)
Carmelle F. Alipio (N.C. 54738)
301 Fayetteville St., Suite 1700
Raleigh, NC 27601
Telephone: 919-981-4000
Fax: 919-981-4300
rvanarnam@williamsmullen.com
calipio@williamsmullen.com

**PERKINS COIE LLP**

Katherine M. Dugdale, Bar No. 168014*
KDugdale@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Jacob P. Dini, Bar No. 54115*
JDini@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone:      206.359.8000
Facsimile:       206.359.9000

*Counsel for Plaintiff Epic Games, Inc.*
*Notice of Special Appearance forthcoming